NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Estate of | ) |
| | ) Supreme Court No. S-17584 |
| LAWRENCE EUGENE MARX. | ) |
| | ) Superior Court No. 1JU-17-00078 PR |
| | ) |
| | ) MEMORANDUM OPINION |
| | ) AND JUDGMENT* |
| | ) |
| | ) No. 1864 – December 8, 2021 |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: David H. Marx, pro se, Angola, Louisiana, Appellant. BethAnn Boudah Chapman, Faulkner Banfield, P.C., Juneau, for Appellee.

Before: Winfree, Chief Justice, Maassen, Borghesan, and Henderson, Justices. [Carney, Justice, not participating.]

I.    INTRODUCTION

A couple created a revocable trust; they deeded real property to the trust and later ascribed other assets to the trust by affidavits. After their deaths estate assets were distributed under the terms of a will. A trust beneficiary contested the distribution, arguing that some assets distributed under the will were trust assets. A probate master recommended the distribution be approved, and the superior court approved the

---

\*      Entered under Alaska Appellate Rule 214.

distribution. The trust beneficiary now appeals. We affirm the superior court's decision in large part, but we remand for further consideration of specific real property's status.

## II.	FACTS AND PROCEEDINGS

### A.	Facts

Lawrence and Nancy Marx[1] executed a trust declaration in 1991. Lawrence and Nancy named themselves as trustees and their two sons, Peter Marx and David Marx, as beneficiaries. The trust provided that the corpus was to be distributed to the beneficiaries upon Lawrence's and Nancy's deaths. Lawrence and Nancy also executed a quitclaim deed transferring real property located in Tenakee Springs to the trust.

Lawrence and Nancy prepared an affidavit in 2000 purporting to transfer additional assets to the trust, including bank accounts, life insurance policies, a sales contract, "estate lots," and mining shares. Although unsigned, the document was witnessed by one person and notarized. In 2009 Lawrence and Nancy executed another affidavit purporting to transfer additional assets to the trust, including bank accounts, life insurance policies, and real property located in Hyder. The affidavit was signed by Lawrence and Nancy, witnessed by two people, and notarized.

Peter pre-deceased Lawrence and Nancy, and David has been incarcerated since 2011. Lawrence and Nancy amended the trust to name Lawrence's brother, James Marx, as successor trustee. Following Nancy's 2012 death, Lawrence executed a 2014 will leaving his estate to James and naming James as the estate's executor.

---

[1]	Because the parties all share the same surname we use their first names to avoid confusion; we intend no disrespect.

## B. Proceedings

Following Lawrence's 2016 death, James filed an application for informal probate and attached Lawrence's 2014 will.[2] In February 2017 James was appointed personal representative of Lawrence's estate.[3] James filed an inventory of Lawrence's assets, totaling approximately $80,000. Although the timing is unclear, at some point James provided David an inventory with an attachment identifying trust assets and estate assets. In October James provided notification that the estate would distribute $10,000 to David to satisfy Alaska's personal property exemption.[4] David objected to the proposed personal property exemption distribution, but it is clear the parties recognized David's objection to the distribution of what he contended were trust assets.

James petitioned for approval of the proposed distribution of the estate assets, and a probate master's hearing was held in April 2018.[5] The hearing primarily addressed whether James had listed trust assets as estate assets. James testified that the only trust asset was the Tenakee Springs property. David testified that the assets listed

---

[2]     *See* AS 13.16.080 (providing for informal probate proceedings).

[3]     *See* AS 13.16.015 (providing for appointment of personal representative to administer decedent's estate).

[4]     *See* AS 13.12.403 (providing that decedent's surviving children are entitled to $10,000 personal property or equivalent from estate); *Est. of James V. Seward*, 401 P.3d 976, 988 (Alaska 2017) (noting that "the exempt property allowance is directed to 'children,' which includes adult, non-dependent children").

[5]     *See* AS 13.16.025 (providing probate jurisdiction for "actions to determine title to property alleged to belong to the estate[] and of any action or proceeding in which property distributed by a personal representative or its value is sought to be subjected to rights of creditors or successors of the decedent").

in the 2000 and 2009 affidavits were trust assets and could not be distributed under Lawrence's will.[6]

The probate master recommended that the proposed distribution be approved. The probate master noted: "The record indicates that all the property James . . . proposes to distribute is within the decedent's estate and not part of the trust. David . . . has not established that any of the property to be distributed is within the trust. His objections to the distribution ignore[] the record."

The superior court reviewed the magistrate judge's recommendation and ordered additional briefing about some assets, including whether the 2009 affidavit may have transferred the Hyder property to the trust. The court noted that because the affidavit contained "a legal description of the property, and it is signed and notarized . . . . an argument could be made that it operates as a deed."

James's supplemental briefing pointed out that Lawrence and Nancy had "not executed deeds to transfer ownership of the Hyder property to the Trust" and in subsequent documents listing trust assets they had not included the Hyder property; he argued that this was evidence of their intent not to transfer the Hyder property to the trust. James contended that "real property and bank accounts are not transferred to a trust unless title is changed as required by the law governing those assets." He emphasized the importance of "documentation consistent with laws governing the transfer of real property." James also argued that, even if the affidavits transferred assets to the trust, Lawrence had "the right to dispose of trust assets in any manner" and he later

---

[6] David also suggested that James improperly removed trust property from the Tenakee Springs property, but the master concluded "that whatever trust property James . . . removed from the Tenakee property was for safekeeping, returned, and . . . some of the property was sent to [David through his power of attorney]." David did not appeal this issue, and we do not further address it.

"exercised his right . . . by changing the ownership of the assets and how they were to pass at his death."

David argued in response that both affidavits Lawrence and Nancy had executed were sufficient to transfer title of the Hyder property and other assets to the trust and that the affidavits were evidence of their intent to do so. He contended that property "could be transferred by any means," and he pointed out that the 2009 affidavit in particular "include[d] a Grantor, Grantee, and descriptions of the property to be considered a valid Deed."

Both parties acknowledged that "Alaska Statutes do not require any specific manner in which assets are to be transferred to a trust." The superior court ultimately agreed with James's arguments, adopted the probate master's recommendation, and approved James's proposed distribution.

David — self-represented — appeals, contending that the superior court erred by deciding that additional assets had not been conveyed to the trust and by approving the probate distribution.[7]

---

[7]     David also questions the constitutionality of a number of Alaska Statutes. "[P]leadings of self-represented litigants should be held to a less stringent standard and . . . their briefs are to be read generously." *Tobar v. Remington Holdings LP*, 447 P.3d 747, 753 (Alaska 2019). But a self-represented litigant still "must cite authority and provide a legal theory." *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 (Alaska 2005). Even read generously, David's arguments are conclusory, inadequately developed, and cite no authority; we thus consider his arguments waived. *See Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 538 (Alaska 2015) (holding self-represented litigant's conclusory and inadequately developed arguments waived).

## III. STANDARD OF REVIEW

"Factual findings issued by a probate master and adopted by the superior court judge are reviewed under the clearly erroneous standard."[8]  Issues of law are reviewed de novo.[9]

## IV. DISCUSSION

David contends that the superior court improperly approved the probate administration and estate distribution because James's inventory listed as probate assets items that were transferred to the trust by the 2000 and 2009 affidavits.  Several types of assets were at issue:  bank accounts, securities accounts, life insurance policies, Public Employees' Retirement System (PERS) funds, and the real property.  It is unclear whether the two affidavits specifically reference all of the accounts and other items included in the probate estate inventory, and the life insurance policies were not listed as part of the inventory.  The court nonetheless had jurisdiction to consider David's objections to distribution of estate assets.[10]

We affirm the superior court's orders approving the standing master's recommendation and the estate's proposed distribution with respect to all the disputed financial assets.  But we remand for further consideration of whether the 2009 affidavit effectively transferred the Hyder real property to the trust.

---

[8]     *In re Est. of Johnson*, 119 P.3d 425, 430 (Alaska 2005).

[9]     *See id.*

[10]     *See* AS 13.16.025 ("The court has exclusive jurisdiction of formal proceedings to determine how decedents' estates subject to the laws of this state are to be administered, expended, and distributed.").

## A. Various Financial Assets

Bank accounts are distributed at death based on the account's features: a single-party account without a pay-on-death designation is distributed to the decedent's estate; a multi-party account with rights of survivorship belongs to the surviving party; a multi-party account without rights of survivorship is divided, with the decedent's share distributed to the decedent's estate.[11] One bank account was titled in only Lawrence's name. Two other bank accounts appear to have been multi-party accounts, with Lawrence and James listed as the owners. The result is the same for all three accounts: a single-party account passes to Lawrence's estate and then to James under the will; a multi-party account without rights of survivorship is divided, with Lawrence's share passing to his estate and then to James under the will; a multi-party account with rights of survivorship passes to James. The trust was not listed as an owner or designee on any bank account, and the superior court did not err by determining the accounts were estate assets.

Securities accounts are distributed at death based on the account's features: an account with a beneficiary designation passes to the designated beneficiary, and if there is no living designated beneficiary the account passes to the decedent's estate.[12] The record contains an account summary for a securities account, but it is unclear from the summary whether there was a designated beneficiary. James testified that after he explained he was the personal representative, the securities firm paid the funds to Lawrence's estate. Given the absence of contrary evidence, the superior court did not err by determining that there was no designated beneficiary and that the account was an estate asset.

---

[11] *See* AS 13.33.212(a)-(c).

[12] AS 13.33.307.

"Life insurance policies are non-probate transfers" and are paid to the designated beneficiary.[13]  The two affidavits therefore had no effect on the beneficiary designation under the life insurance policies, and the superior court did not err by determining that the life insurance policies were not trust assets.

PERS benefits are paid to the designated beneficiary upon the PERS member's death.[14]  Because the record indicates that James was the designated beneficiary of Lawrence's PERS plan, the superior court did not err by determining that the PERS benefits were estate assets.

Seeing no discernible error with respect to the financial assets, we affirm the superior court's decision.

## B. Real Property

A valid conveyance of real property must indicate:  (1) a grantor and grantee; (2) an intent to convey property; and (3) the property description with some specificity.[15]  A written conveyance that is unacknowledged and unrecorded is a valid conveyance of real property between the parties.[16]  A properly acknowledged

---

[13]    *In re Est. of Blodgett*, 147 P.3d 702, 711 (Alaska 2006); AS 21.45.140.

[14]    AS 39.35.490(a).

[15]    *See Maddox v. Hardy*, 187 P.3d 486, 492-93 (Alaska 2008) (affirming title transfer between parties based on bill of sale without recorded deed and noting "recording act is meant to protect a subsequent purchaser's reliance on a seller's title"); *Roeckl v. F.D.I.C.*, 885 P.2d 1067, 1071 (Alaska 1994) (requiring identifiable, non-fictitious grantor and grantee for valid deed transfer); *Dimond v. Kelly*, 629 P.2d 533, 539 (Alaska 1981) (affirming conveyance when intent to convey property was clear and property conveyed was well-defined).

[16]    *Smalley v. Juneau Clinic Bldg. Corp.*, 493 P.2d 1296, 1301 (Alaska 1972).

conveyance is "admissible as evidence of the conveyance without further proof."[17] "[P]roperly acknowledged and recorded documents 'create presumptions with respect to title,' "[18] but "presumptions of a recorded deed can be overcome by clear and convincing evidence."[19]

In 1995 Lawrence, acting as personal representative of his brother Leonard's estate, deeded "Block Fourteen (14) as shown on the official plat of Hyder Townsite Division, U.S. Survey 3861" to himself, James, and another individual. In 2007 Nancy quitclaimed her interest in "Lot 5 Block 4 U.S. Survey 1428 Hyder Townsite" to Lawrence. These recorded deeds create a presumption that the Hyder properties are titled in Lawrence's name.

But presumption of title can be overcome by clear and convincing evidence, and the notarized 2009 affidavit is "admissible as evidence of the conveyance [from Lawrence and Nancy individually to Lawrence and Nancy as trustees of the trust] without further proof."[20] The 2009 affidavit states that Lawrence and Nancy "hereby transfer . . . property to the Lawrence and Nancy Marx Trust" then describes "1/3 of Block Fourteen (14) of U.S. Survey 3861 in Hyder, Alaska 99923" and "Lot 5 of Block 4 U.S. Survey 1428 in Hyder, Alaska 99923." The affidavit indicates: (1) a grantor and grantee; (2) intent to transfer property; and (3) the property description with some specificity. There is no evident reason, as to Lawrence and Nancy individually and

---

[17]     *Maddox*, 187 P.3d at 492 (quoting AS 40.17.090(a)).

[18]     *Id.* (quoting AS 40.17.090(b)).

[19]     *Id.*

[20]     *See id.* (quoting AS 40.17.090(a)).

Lawrence and Nancy as trustees, why this was not a valid conveyance; this is not a situation of an innocent third party asserting prejudice from an unrecorded deed.[21]

The probate master and the superior court did not meaningfully explain the effect of the 2009 affidavit on the Hyder properties' ownership. The probate master summarily stated: "The record indicates that all the property James . . . proposes to distribute is within the decedent's estate and not part of the trust. David . . . has not established that any of the property to be distributed is within the trust. His objections to the distribution ignore[] the record." But the master did not explain why the notarized affidavit, which is "admissible as evidence of the conveyance without further proof,"[22] is not clear and convincing evidence sufficient to overcome the presumption of title.[23] Given the lack of analysis on this issue, the superior court's conclusions are not adequate for review. We therefore remand for the court to address whether the 2009 affidavit effectively conveyed the Hyder property to the trust.

## V.    CONCLUSION

We VACATE and REMAND the superior court's decision approving the probate master's recommendation pertaining to the specific real property addressed in the 2009 affidavit; we AFFIRM the court's decision in all other respects.

---

[21]    *See id.* at 492-93.

[22]    AS 40.17.090(a).

[23]    James challenges the authenticity of the relevant portions of the 2009 affidavit. But at the evidentiary hearing James stipulated to the admission of both pages of the 2009 affidavit and did not object to the document's authenticity. James therefore waived any argument challenging the document's authenticity. *See* Alaska R. Evid. 902(8) (providing that acknowledged documents are self-authenticating).