Joseph A. Doran, J.
The petitioner herein seeks a declaration of paternity against the respondent and support for a child born to her on January 21, 1959, out of wedlock. The mother and child are residents of Denmark, and it is not disputed that conception and birth occurred abroad. There is no question of jurisdiction in the case. (See Matter of Urbancig v. Pipitone, 23 A D 2d 193.)
The respondent, however, moves to dismiss the petition on the ground that the issues have already been adjudicated in Den *514 mark prior to commencement of this proceeding in or about March, 1965. He acknowledges paternity of the child in question and his obligation of support under Danish law (Act No. 200 on Children’s Legal Eights, May 18, 1960, ch. 2, Support of the Child, § 13), which places the duty of support on both parents according to their conditions of life and the child’s needs. The same statute also provides that the “ chief administrative officers ” may order the payment of contribution towards support against a defaulting parent. On May 8, 1959, the respondent appeared before the Danish Consulate in New York and signed a “ declaration of paternity ” as follows: “ I * " * do hereby declare to have had sexual intercourse with [petitioner] ® * * at such time that I could be the father of the child to whom she gave birth on January 21, 1959, and I acknowledge the paternity and am willing to pay support money as decreed by the proper Danish authorities. ’ ’ This declaration was made, as stated therein, with awareness of “ the legal consequences of acknowledging the paternity, especially the obligation to pay alimony, the child’s right to inheritance and its right to carry my name ’ ’ under Danish law.
On August 28, 1961, an “ alimony decree ” (thus entitled by the respondent) or “affiliation order” (thus entitled by the petitioner) was made in the Diocese of Funen (Denmark), wherein it is recited that paternity had been established by acknowledgment or recognition before the Danish Consul General in New York, and support for the child was ordered at the “ standard contribution ” then in force for the municipality or locality of residence and subject to advancement out of the public funds. The amount of support was subject to modification or adjustment according to the circumstances.
The respondent submits a letter from the office of the Consulate General of Denmark in New York, dated December 22, 1965, stating that “ The administrative authorities who have issued the decree, are entitled to do so according to section 13 of the Danish Act on Children’s Legal Eights [and] the person who has signed the alimentory decree was entitled to do so.” (Emphasis the court’s.)
It is conceded that the respondent has paid support for the child under the ‘ ‘ alimony decree ” or “ affiliation order ’ ’ aforesaid — whatever be the correct designation — to July 21, 1966. As of said date, however, the same" was “repealed” at the request of the mother by the Social Administration of the Municipality of Odense on March 1, 1966, and the Diocese of Funen on March 8,1966, ‘ ‘ it being her intention to sue the father *515 of the child for an Affiliation Order in U. S. A.” The respondent complains that this ‘ ‘ repealer ’ ’ was ex parte and without notice to him. He does not assert, however, that it was made contrary to Danish law and procedure in the premises, and certainly makes no showing that the said “repealer” is ineffective to accomplish its purpose as an exercise of power beyond jurisdiction of the issuing authority.
“This State is concerned ”, said the court in Matter of Urbancig v. Pipitone (23 A D 2d 193, 198, supra), “with its domiciliaries or residents supporting their children” — even illegitimate children- — and no distinction for this purpose is made between children out-of-State and in foreign countries. Such is our public policy. The respondent agrees, and has, indeed, paid support for his child born to the petitioner out of wedlock until July 21,1966, pursuant to the order of the Danish authorities as aforesaid.
The instant proceeding is not initiated — and could not be — under the “ Uniform Support of Dependents Law ” (Domestic Relations Law, art. 3-A). The jurisdiction of the court is invoked under article 5 of the Family Court Act (§ 511 et seq.) as the only means of effectuating our public policy in the circumstances of this case (see Matter of Urbancig v. Pipitone, supra). The proceeding is entirely statutory and serves the twofold purpose of determining paternity and securing support for the child (Rough v. Light, 275 App. Div. 299, 300). Additionally, it may be noted that a right of inheritance from his father not recognized at common law now also belongs to an illegitimate child if a court of competent jurisdiction shall have made an order of filiation in a paternity proceeding timely commenced as provided by statute (see Decedent Estate Law, § 83-a, as added by L. 1965, ch. 958, § 1, eff. March 1,1966).
The respondent raises the plea of res judicata to defeat this proceeding and urges that the issues — paternity and support of the child — have been determined in Denmark under the order made by the “ administrative authorities ” of the Diocese of Funen as aforesaid on his admission of paternity before the Danish Consul in New York. As previously indicated, he continues to acknowledge parenthood and an obligation to maintain the child in question. No other relief is sought — or even opposed on the merits — in this case.
The rule of res judicata is a doctrine of repose to safeguard rights and interests once decided against destruction or impairment by a different judgment in a later action. It is clear that the respondent’s only concern here is to protect the “ standard *516 contribution ’ ’ required of him by the Danish authorities until his child reaches 18 years of age. Apparently, however, he has no vested right in the amount of said support any more than he would have such right under an order of this court in a filiation proceeding (cf. Matter of Anonymous v. Anonymous, 40 Misc 2d 492, 497). The Danish decree provides in terms that it may be increased or reduced according to the circumstances.
Assuming, however, the effect claimed by the respondent for the order of the “ administrative authorities ” fixing support for the child in Denmark, nevertheless it has been repealed— on unilateral application of the petitioner in this case — by the very same authorities who made it in the first instance. Unless and until the said “repeal” is set aside in accordance with Danish law and procedure as may be applicable, it would seem to be entitled to as much recognition and respect as the original directive for support of the child herein. There can be no question of due process under our laws. As the matter stands, therefore, the respondent is presently under no judgment or order for support of his child in any jurisdiction.
The respondent’s motion to dismiss the proceeding on the ground of res judicata herein is denied.