OPINION OF THE COURT
John F. Pollard, J.
In the herein-treated motion, respondent moves the court for an order declaring the paternity provisions of article 5 of the Family Court Act- unconstitutional. Additionally, dismissal of the instant petition is sought based on this argument. Five grounds in support of respondent’s position are presented for consideration. Article 5 is deemed constitutionally defective on the basis that "(á) no provision is made for a male, or father, to bring a proceeding to establish the maternity of a child, although the reverse is true; (b) the father may be required to pay the expenses of the mother’s confinement and recovery, although no provision is made making the mother also responsible for her confinement and recovery; (c) no provision is made concerning the ability of the father to enter a compromise; (d) venue is not provided for in a county where a mother 'is found’, although it is for a father; (e) no provision is made for. a mother to pay for a blood-grouping test, although such a provision is made for a father to do so if he is financially able.” This court is urged to grant the requested relief because it is contended, the recent United States Supreme Court decision in Orr v Orr (440 US 268) mandates such a result. The court does not agree with this conclusion.
Protection of the welfare of the illegitimate child is the primary focus of a filiation proceeding. Article 5 of the Family Court Act is the mechanism by which this result is accomplished. Determining paternity and securing support for the child is the twofold purpose for the inclusion of this article in the Family Court Act. (Matter of J. [Anonymous] Children, 50 AD2d 890, app dsmd 39 NY2d 741; Hough v Light, 275 App Div 299.) In view of this, respondent’s arguments may be disposed of in the following manner.
At common law, the putative father owed no duty of support to a child born of an illicit relationship. (Schneider v Kennat, 267 App Div 589, app den 267 App Div 954.) In light of the fact that provision for child support was deemed neces *723 sary by an enlightened Legislature, filiation proceedings were instituted in order to fix the putative father’s obligation. No separate proceeding to determine maternity and hence maternal obligations is necessary simply because the relationship between mother and child is biologically established from the point of conception. Furthermore, the very equity of article 5 of the Family Court Act is made apparent when one considers, for example, that section 513 of the Family Court Act, which outlines the financial responsibilities owed to an illegitimate child, is applicable to the natural father only after his paternity has been conclusively resolved. Consequently, the court can find no merit in respondent’s position on this ground.
The obvious purpose of section 514 of the Family Court Act, which makes the father liable for, the confinement and recovery expenses of the mother, is again aimed at ensuring that the child’s welfare is safeguarded. The statute attempts to ascertain who is in the best position to meet the child’s needs and delegates responsibility accordingly. It is a patent observation that a woman who has just undergone the rigors of childbirth is not in a superior position to furnish necessaries for either herself or her child, absent some independent source of income provided for her. It is to be noted that under section 514 of the Family Court Act, the court is afforded discretion in determining the "reasonable expenses” for which the father is liable. Obviously, the court may take into consideration the mother’s resources in fixing an equitable amount to be charged against the father. Furthermore, there is no constitutional violation in applying this section because there is no arbitrariness underlying the imposition of the obligation. Since a finding of paternity is a prerequisite for an award of expenses to the mother under this section (Matter of Barbara B. v Glenn S., 70 Misc 2d 728), the existence of the father’s duty is established before any question of liability is even considered. Furthermore, the father’s responsibility under section 514 of the Family Court Act is limited to the term of the mother’s confinement and recovery. Upon termination of this period, the dual parental responsibility mandated by section 513 of the Family Court Act reasserts itself. If there is any disparity evidenced by the application of section 514 of the Family Court Act, it is mitigated by the fact that the operation of the section is intended to serve a valid State purpose, that is the preservation of the child’s welfare. Additionally, any alleged inequity is palliated as a consequence of the limited duration of the father’s liability under this section. *724 All of the foregoing moves this court to find respondent’s argument untenable on this ground.
Respondent correctly interprets section 516 of the Family Court Act. No provision is made concerning the ability of the father to enter a compromise concerning the support of either the mother or child. However, respondent in his argument, fails to accurately assess the supporting rationale of section 516 of the Family Court Act. The section was initiated as a device to enable a mother to compel the support of her illegitimate child by the natural father. It would be superfluous and illogical to provide a means for the father to enter such an agreement under section 516 since the entire thrust here is toward a recalcitrant parent whose aim would obviously be to avoid support of his dependents. Moreover, such a provision is unwarranted here since a father who wishes to voluntarily support his offspring may do so by either initiating judicial proceedings himself, provided under newly revised section 522 of the Family Court Act or by entering into a private compact with the mother. Hence, the court finds respondent’s reasoning unpalatable on the above ground.
The basis upon which respondent states that where a father brings filiation proceedings, venue is not laid in a county where the mother is found is not readily apparent. The statute clearly states otherwise. Section 521 of the Family Court Act includes in its purview the counties where either the mother, putative father or child is found. Consequently, the court dismisses this contention.
The essence of section 532 of the Family Court Act, which provides for blood-grouping tests of principal participants in filiation proceedings, is to afford some measure of protection primarily for the putative father. The main purpose of the examination is "to determine whether or not the alleged father can be excluded as being the father of the child” (Family Ct Act, § 532). In a contested paternity action, such a result certainly benefits the alleged father. Hence, inequity results if a mother is compelled to pay for a test which may defeat her cause of action, since a negative outcome is a conclusive victory for the alleged father while a positive result does not automatically enhance the mother’s position. This is so, inasmuch as the results of such tests are only admissible in evidence if they definitely exclude paternity, a consequence which favors the putative father. Therefore, no imbalance of equities results by requiring the father *725 to assume the cost of at least the initial test. In addition, under amended section 532, the tests may now be had on motion of any party. At least one Family Court Judge in New York County has interpreted this to mean that the party who requests the test bears the expense. (Matter of Carol B., 94 Misc 2d 1015.) Therefore, it is conceivable that a mother would be ordered to pay for blood-grouping tests especially in a situation where she is requesting a retest of the respondent father. Giving due consideration to the foregoing, the court is constrained to disregard respondent’s position taken herein.
The United States Supreme Court, in its decision Orr v Orr (440 US 268, supra) found that the Alabama alimony statutes were unconstitutional. The finding was based on the fact that the statutory scheme in question created a constitutionally suspect classification in that distinctions made therein were gender-based without serving important governmental objectives. Respondent in the instant proceeding further asserts that article 5 is constitutionally defective, in view of the above-cited recent Federal opinion. The court cannot condone this reasoning.
Prior to Orr (supra), only divorced wives could be recipients of alimony awards in Alabama. The rationale for this was twofold. Divorced wives were viewed as a financially needy dependent class. Likewise, they were seen as objects of economic discrimination as a result of their previous married status. Consequently, husbands, who were deemed natural providers, were delegated the responsibility of indemnifying and rehabilitating this desperate class. The Orr court found that "sex was not a reliable proxy for need” and that "Alabama’s alleged compensatory purpose may be effectuated without placing burdens solely on husbands.” (Orr v Orr, 440 US 268, 282, supra.)
In contrast to this state of affairs, this court views article 5 of the Family Court Act in an entirely different light. In no way does the statute place child support obligations solely upon one class of people. Nor does it discriminate on the basis of sex. Both parents are held responsible for the support of their child, as is clearly demonstrated in section 513 of the Family Court Act. Additionally, section 561 of the Family Court Act squarely places support obligations upon the mother involved. The legislative rationale is to secure support for the natural child, as noted supra. The purpose of article 5 is to provide a process to help identify the putative father *726 involved so that he may assume his equitable share of the underlying responsibility toward the child. In no way can either the statutory objective or the means provided to accomplish such, be labeled violative of basic constitutional guarantees.
Accordingly, the court declines to declare article 5 of the Family Court Act unconstitutional. The motion to dismiss the herein-treated petition is denied.