OPINION OF THE COURT
Arthur J. Abrams, J.
This article 5 of the Family Court paternity proceeding was commenced by the Suffolk County Department of Social Services on behalf of one Deborah Thompson against respondent Harden Dinkins, Jr.
The trial was commenced and concluded on June 2,1981. At the outset, the respondent orally raised two defenses, to wit: that the petition should be dismissed because of the petitioner’s laches and that such dismissal was in the best interest of the child. These defenses were denied for the reasons set forth on the record. Upon the completion of testimony, the respondent requested, was granted permission and submitted a posttrial memorandum which re-raised the identical defenses alluded to heretofore. The *674 County Attorney offered no further submission but relied on the points raised at trial. We will reconsider the defenses first.
With respect to respondent’s contention that the instant proceeding must be dismissed due to the existence of laches attributable to the petitioner, the interposing of such a defense does not lie in an action brought pursuant- to article 5 of the Family Court Act. While the inexcusable failure to promptly assert a claim may, at times, operate as a bar to relief, such failure constitutes a barrier only in equitable actions. It is a time-honored legal maxim that the doctrine of laches is one peculiar to actions in equity; laches does not operate to bar actions at law that are commenced within the applicable limitation period (Bohemian Brethren Presbyt. Church v Greek Archdiocesan Cathedral of Holy Trinity, 94 Misc 2d 841; Wynn v Wynn, 189 Misc 96; Hennessey v Merrill, 65 NYS2d 639; Wilson v Phelps, 165 Misc 455; see, also, Groesbeck v Morgan, 206 NY 385). A paternity proceeding, unknown at common law, is a creature of statute and clearly an action at law (Hough v Light, 275 App Div 299; Matter of Johnson v Berger, 51 Misc 2d 513; Matter of ABC v XYZ, 50 Misc 2d 792), therefore, it cannot be affected by laches. The action is either timely or untimely pursuant to statute.
Since the instant proceeding was commenced within the period provided by subdivision (b) of section 517 of the Family Court Act, it must be construed as being timely. The propriety of the period of limitations applicable to petitioning public welfare officials has been the subject of much judicial discussion, and need not be recounted herein. (See, e.g., Matter of Jay v Wolfe, 76 Misc 2d 680; Matter of Commissioner of Welfare of City of N.Y. v Jones, 73 Misc 2d 1014; Matter of Mores v Feel, 73 Misc 2d 942; Matter of Lydia L v Vidal L, 95 Misc 2d 507.) Suffice it to say that the Legislature, by enacting subdivision (b) of section 517, is presumed to have considered both the notions of public policy and prejudice, therein favoring an extended period for public welfare petitioners. (Matter of Lydia L v Vidal L, supra.) Respondent’s assertion that the Legislature intended the 10-year period to apply to situations wherein the public official grants assistance after the *675 expiration of the normal two-year period (Family Ct Act, § 517, subd [a]) is unsubstantiated and must be discounted as mere surmise.
Respondent furthér maintains that the instant proceeding must be dismissed as not being in the child’s best interests, citing Matter of Jean C. (NYLJ, Nov. 25, 1980, p 13, col 2), relying parenthetically upon subdivision 3 of section 111-c of the Social Services Law for the proposition that the public welfare official must prove that the proceeding would benefit the child. Respondent’s reliance upon subdivision 3 of section 111-c of the Social Services Law is misplaced. The statute enumerates those powers and duties of the local social service official relative to accepting support assignments, to enforcing support obligations and to locating absent parents of dependent children (see Social Services Law, § 111-c, subds 1, 2). Subdivision 3, added by section 4 of chapter 326 of the Laws of 1976, created an exception to the general rule that the public official must enforce support obligations in every case. The new subdivision gives the public official the discretion not to establish paternity and seek support if such action would be detrimental to the child’s interests. The discretion afforded the legal official is wholly internal and cannot be said to relate in any manner to the proceeding herein. This court cannot substitute its judgment for that of the local social service official even were we so predisposed. The remedy in this regard is by way of an article 78 proceeding in the Supreme Court. Accordingly, while the facts herein are quite similar to the facts in Matter of Jean C. (supra), we do not accept the reasoning contained therein as a basis for dismissing the paternity petition herein.
Gratuitously, we note that even if Matter of Jean C. (supra) were controlling, we do not see how the child, herself, or a child similarly situated requires the barring of. the prosecution of the within proceeding. While certain rights and obligations are assuredly created between putative father and child by the adoption of a filiation order, a paternity proceeding primarily seeks support for children born out of wedlock (Matter of Geraldine K. v Elliott D.B., 99 Misc 2d 720). For the most part, the court possesses the *676 power to preclude the concerns enunciated by Judge Fogarty in Matter of Jean C. relative to the “imposition of the child” upon the father. A filiation order still leaves determination of custody, visitation, etc., to the court. Further, an order of filiation may be questioned by a person acting on behalf of the child as the infant is not bound by the court’s determination. In view of the overriding public policy of securing support reimbursement for dependent children coupled with the protections provided the child by the court, we reiterate that, as we see it, Matter of Jean C. would not be the basis for an order of dismissal.
The issue, as is invariably the case in a filiation matter, is one of creditability.
Each party called one witness, Ms. Thompson for the petitioner — the respondent for himself. Predictably, the testimony was quite disparate. The petitioner alleged that the parties met in mid-August of 1972, first had sex two weeks later and continued these relations through May of 1973. The respondent stated that they had met in May of 1972, commenced sexual relations one week later and terminated their relationship in July of 1972. Further, that he was never with the petitioner from July of 1972 to August of 1973, the month of the child’s birth. On the witness stand, the petitioner averred that she discovered that she was pregnant in April of 1973, in her bill of particulars she stated that it was in January of that year. She testified that she had informed respondent of her pregnancy on the last day of April or the first day of May, 1973. In her bill of particulars, she related that she had told the respondent of her pregnancy in January of 1973. Contrary to her courtroom statement, the bill of particulars notes that intercourse commenced at the end of September or the end of October, 1972. The court is mindful that some eight years have passed between the time of the mother’s and alleged putative father’s relationship. This alone could explain the discrepancies in the witnesses’ testimony, however, the many inconsistencies between mother’s testimony and her bill of particulars, both 1981 vintage, cannot be explained easily or otherwise. It is beyond cavil that a paternity petition be established by evidence that is clear, convincing and entirely satisfactory *677 (Matter of Department of Social Servs. of Orange County v Alan K., 69 AD2d 861; Matter of Commissioner of Social Servs. of N.Y. v James H., 65 AD2d 772; Matter of Snyder v Davis, 53 AD2d 1026). The petitioner’s testimony herein absolutely precludes such a finding; the petition is accordingly dismissed.