*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| Estate of JAMES V. SEWARD, Deceased. | ) ) ) ) ) ) ) ) | Supreme Court No. S-15561 |
| | | Superior Court No. 3AN-13-02105 PR |
| | | O P I N I O N |
| | | No. 7175 – June 2, 2017 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Vincent E. Mock and Gaylene L. Mock, pro se, Lexington, Kentucky, Appellants. Donna C. Willard, Personal Representative of the Estate of James V. Seward, Anchorage, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

WINFREE, Justice.

## I. INTRODUCTION

A decedent left a will stating he had no children. But during probate proceedings a man in his early 30s claimed to be the decedent's son, requested genetic testing on the decedent's cremated remains, and filed numerous motions in an attempt to share in the decedent's estate. The man's mother also filed numerous motions in the proceedings, claiming to be a creditor of the decedent's estate and seeking recovery of child support from the man's birth to his 18th birthday. After previously signing orders

denying the motions based on the probate master's reasoning that paternity determinations may not be made in estate proceedings, the superior court ultimately ruled that: (1) laches barred the man's and his mother's efforts to establish paternity; and (2) because paternity had not been established, neither the man nor his mother had standing to pursue a claim in the estate proceedings.

We disagree with the probate master and superior court's underlying conclusion that a paternity determination may not be made in estate proceedings. We also disagree with their conclusion that a laches defense could apply in this context. We nonetheless affirm the superior court's decision with respect to the man's mother on the alternative ground that her putative creditor claim — the only basis by which she could be an interested person in the estate proceedings — unquestionably is barred by the applicable statute of limitations. But if the man proves to be the decedent's son he has, at a minimum, certain statutory rights that: (1) may be established through declaratory judgment in the probate proceedings; and (2) might not be barred by a statute of limitations. Because the statute of limitations defense to the man's claim was briefed only in limited fashion in the superior court and was not ruled on by that court, and because the issue has not been adequately briefed to us, we: (1) explain in detail how the man may be entitled to a statutory allowance from the estate; and (2) order that supplemental briefing be filed to assist us in resolving whether a statute of limitations may bar the man's recovery from the estate.

## II. FACTS AND PROCEEDINGS

James V. Seward executed a will on September 11, 2008. In it Seward stated: "I hereby declare that I am a single man and that I have no children, nor do I have any deceased child or children with lineal descendants now living." The will also provided: "If any relative, or person claiming to be an heir or relative, or any other person whomsoever, should attempt by legal action or otherwise, to contest this Will, I

hereby give [such person] the sum of $1.00 . . . ." Seward appointed Donna Willard, the attorney who prepared the will, as his estate's personal representative; he instructed that his body be cremated and the ashes scattered on the mountains overlooking Anchorage; and he expressed how he wanted his estate distributed. Seward died in Anchorage in May 2013 at age 90.

In August 2013 Willard applied for informal probate of Seward's will and appointment as the estate's personal representative.[1] Willard stated that she believed the will was "validly executed," and that she was "unaware of any instrument revoking [the] will." But she also stated that the will was executed "the 11th day of September 2011" when in fact the will was executed on September 11, 2008. In September Willard's application for informal probate of the will "dated September 11, 2011" and appointment as personal representative was approved by the probate master.

In October Vincent Mock — self-represented — filed a motion requesting genetic testing on Seward's ashes to prove he is Seward's son. The following month he asked that Seward's estate not be distributed until he could establish Seward's paternity. Willard opposed both motions, contending that Seward's ashes already had been scattered according to his will and that even if Vincent could prove Seward's paternity, Vincent would not be entitled to estate assets because he was not mentioned in Seward's will, was not a minor child entitled to statutory protection,[2] and was not a pretermitted

---

[1]    *See* AS 13.16.080-.130 (establishing informal procedures for accepting will for probate and appointing personal representative); *see also* AS 13.16.010 (providing that will may be declared valid by order of informal probate); AS 13.16.350 (stating personal representative's duty to settle and distribute estate according to probated will).

[2]    *See* AS 13.12.401-.405 (establishing homestead, exempt property, and family allowances for protection of surviving spouse and certain children). We discuss these statutory allowances in detail later in this opinion.

heir.[3] In reply Vincent insisted the urn and airplane used to transport Seward's ashes still could contain ash remnants. Vincent stated that Seward knew Gaylene Mock, Vincent's mother, bore Seward a child and that the assertion in Seward's will that he had no children was the result of memory loss or coercion. Vincent argued that the will was invalid, requiring intestate distribution to him as the sole heir, or alternatively that he was a pretermitted heir because he was "unintentionally . . . omitted from the will" and was not "specifically disinherited."

The probate master recommended denying Vincent's motion for ashes testing,[4] stating: "Probate of [a] last will is not [the] proper venue for [a] paternity contest. Vincent Mock is not an interested party in [the] estate." The probate master also

---

[3] To pretermit in the legal sense means "[t]o neglect, overlook, or omit accidentally; esp. to fail to include through inadvertence." *Pretermit*, BLACK'S LAW DICTIONARY (10th ed. 2014). AS 13.12.302(a), Alaska's pretermitted heirs statute, provides: "[I]f a testator fails to provide in the testator's will for the testator's children *born or adopted after the execution of the will*, the omitted after-born or after-adopted child receives a share in the estate as follows . . . ." (emphasis added). Vincent was born in 1982.

[4] As we have noted previously:

> The standing probate master conducts hearings and recommends findings and conclusions to the superior court. It is the superior court that makes final decisions, and before doing so the court may permit oral argument or additional briefing, may allow the taking of additional evidence, and may grant a trial de novo.

*In re Estate of Fields*, 219 P.3d 995, 1007 (Alaska 2009) (footnotes omitted) (citing Alaska R. Prob. P.2(b), (e), (f)(1)). And as we also have noted previously, Probate Rule 2 "does not create an inferior probate court over which the master presides." *Id.* at 1005 (rejecting "misconception that the probate court is something different from the superior court" and explaining that when adopting Uniform Probate Code, "Alaska chose [to place] subject matter jurisdiction for probate matters with the superior court").

recommended denying without prejudice Vincent's motion regarding disbursal of Seward's estate, stating again that an "[e]state case is not [the] proper venue for [a] paternity contest[,] and Mr. Mock lacks standing because he is not an interested party in [the] estate case." Finally, on a third recommended order denying both motions, the probate master reiterated that a paternity determination is not appropriate in estate proceedings, adding that even if Vincent were Seward's son, "he is not an heir according to [the] last will." In December the superior court signed all three recommended orders without comment.

Meanwhile in November Gaylene — also self-represented — filed a motion requesting that the court acknowledge Seward as Vincent's father. Gaylene stated that she lived with Seward "off and on for thirteen years" and that Seward knew she was pregnant with his child because she "told him so." In opposition Willard argued that Gaylene should have filed a separate superior court action and not a motion in the estate proceedings. Willard also contended that Gaylene had "no standing . . . to establish paternity on behalf of her adult son"; Gaylene was not the real party in interest for seeking a paternity determination or the child support alleged now to be due Vincent; and Gaylene's motion was time-barred under even the most liberal ten-year statute of limitations. The probate master recommended denying Gaylene's motion without prejudice because "[a] probate proceeding is not [the] correct venue for [a] petition to establish paternity," Gaylene "lack[ed] standing as [an] interested party," and Vincent "is not an heir" under the will. In December the superior court signed the recommended order without comment.

Also in December Vincent filed a motion to conduct genetic testing on Seward's sister in California, contending that the testing would establish Seward as his father. Willard opposed the motion, arguing that the estate proceedings were not appropriate for a paternity determination, the applicable statute of limitations had passed,

and Alaska's long-arm statute was not sufficient to establish personal jurisdiction over the sister. Vincent replied that because the sister was a beneficiary under Seward's will, the court could establish personal jurisdiction. In January 2014 the probate master noted that in December 2013 the court had denied Vincent's motion for genetic testing, referring to the order denying genetic testing on Seward's ashes. The master made no specific recommendation regarding Vincent's motion for genetic testing of Seward's sister, and it does not appear the superior court took further action on the motion.

Gaylene filed a creditor claim[5] against the estate in March, claiming Seward's estate owed her "20% of . . . Seward['s] yearly [i]ncome from the year 1982 to the year 2000" for child support. Willard disallowed the claim[6] based on lack of standing, the applicable statute of limitations, and failure to present the claim against the estate within the required time period.[7] Gaylene then filed a petition to allow her claim.[8] Willard opposed Gaylene's petition, arguing: "paternity has never been established, this is the wrong forum in which to establish it, [and] it is too late to establish it both factually

---

[5]     *See* AS 13.16.465 (setting out manner for presenting claims against a decedent's estate).

[6]     *See* AS 13.16.475(a) (providing that personal representative may disallow claims presented to estate).

[7]     AS 13.16.460(a)(1) provides:

> All claims against a decedent's estate that arose before the death of the decedent . . . if not barred earlier by other statute of limitations, are barred against the estate . . . unless presented . . . within four months after the date of the first publication of notice to creditors if notice is given in compliance with AS 13.16.450 . . . .

[8]     *See* AS 13.16.475(a) (barring disallowed claim unless claimant files timely petition for allowance).

and because of the prejudicial delay in waiting so long to try to do so." In her reply Gaylene contended that Willard had no actual authority to deny her claim because the 2008 will was not valid, as it had not been accepted for probate; rather a "September 11, 2011" will had been accepted, but it had been lost. The superior court apparently did not rule on Gaylene's petition, although her proposed order was stamped "not used" in the probate master's signature block.

Vincent and Gaylene filed a number of other motions not relevant to this appeal, and Willard eventually sought to preclude Vincent and Gaylene from filing further motions. Willard argued that Vincent and Gaylene "persist in filing ill-considered motions, wasting the time and resources of both the Court and the Estate" even though they "are [not] interested parties and hence they have no standing to inject themselves into this proceeding." Gaylene responded that Vincent was an interested person as Seward's son and she was an interested person as a creditor.[9] Willard replied that Gaylene had no proof of paternity and that Gaylene had not filed her child support claim within the four-month window provided by AS 13.16.460(a)(1). Willard again reminded the court it already had ruled that Vincent and Gaylene were not interested persons in the probate proceedings.

In a three-page report issued in late March the probate master recommended precluding Vincent and Gaylene from filing further motions because neither was an interested person in the estate proceedings. The master noted there had been no paternity determination despite the lengthy opportunity to obtain one before Seward's death. The master also reasoned that waiting until after Seward's death to bring their claims

---

[9] *See* AS 13.06.050(24) (defining "interested person" in decedent's estate to include decedent's children and creditors).

"work[ed] substantial prejudice on his estate," justifying the application of laches to bar the claims.

Vincent objected to the master's report, arguing that Seward's 2008 will was invalidly admitted to probate because the order accepting Seward's will for probate expressly referred to a "September 11, 2011" will, and not a 2008 will. Vincent therefore suggested that Seward had a 2011 will that had been lost and argued that the referenced 2011 will may have mentioned him or his mother. Vincent further argued that he always had intended "to establish paternity with [his] father . . . [but] just did not expect him to die." Gaylene also objected to the master's report, arguing that it was wrong to rely on the 2008 will when the order accepting a will for probate referred to a 2011 will. Gaylene stated that she and Seward had planned on marrying but their plans fell through, and that she had omitted Seward's name from Vincent's birth certificate and not sought child support because Seward "had a violent temper" and would often hit her.

Also in March Vincent and Gaylene filed motions to remove Willard as the personal representative of Seward's estate. Their arguments again centered around the possible existence of a 2011 will; Vincent questioned whether in a September 11, 2011 will Seward disposed of his assets differently than in the September 11, 2008 will that had been admitted for probate. Willard responded: "Unfortunately, in my application, I made a typographical error utilizing the number 11 for both the day and the year [of Seward's will]. In fact, as the Will evidences, its date of execution was September 11, 2008." In reply Vincent again argued that Willard apparently had probated the wrong will and that a September 11, 2011 will actually existed or had been destroyed by Willard. In May the superior court denied without explanation the motions to remove Willard as personal representative.

In March Vincent also had asked the court to recognize him as Seward's pretermitted heir. Vincent argued he had been "accidentally overlooked" when Seward

created his will but had not been specifically disinherited. Vincent also argued he was a "rightful" and "only" heir entitled to Seward's entire estate. Willard responded by pointing out that a pretermitted heir must be born after the will's execution,[10] but Vincent was born more than 25 years before Seward executed his will. She also argued that if Seward had been aware of Vincent, Seward declined to acknowledge Vincent was his son by declaring in his will that he had no children deceased or living. Citing the provision of the will providing one dollar to any person who contests it, Willard also contended Seward "made it plain" that the will's provisions "were not to be attacked by any relative or person claiming to be an heir or relative." In early May the superior court denied without explanation Vincent's motion seeking recognition as a pretermitted heir.

The superior court in early May also adopted the probate master's March report as its order, precluding Vincent and Gaylene from filing further motions because they were "not interested parties in the estate proceeding." Vincent petitioned for our review of this order, emphasizing both that he was Seward's son and the significance of the alleged will date discrepancy, contending that (1) there existed somewhere a valid 2011 will and (2) the 2008 will had not been effectively registered for probate. Vincent also argued that his mother was a creditor and qualified as an interested person in the estate proceedings. Willard opposed the petition, largely reiterating her arguments made to the superior court. Because the superior court's order was a final judgment as to Vincent (and Gaylene), we converted Vincent's petition for review into an appeal and ordered full briefing. Gaylene filed a notice of participation and joined Vincent in the appeal.

---

[10]     *See* AS 13.12.302(a).

## III. DISCUSSION

### A. The Probate Statutes Contemplate That A Paternity Adjudication May Be Made During Estate Proceedings.[11]

The superior court repeatedly adopted the probate master's recommendations to deny Vincent's and Gaylene's paternity-related motions on the ground that paternity cannot be adjudicated during probate estate proceedings. But when the superior court acts as the probate court[12] it "has 'jurisdiction over all subject matter relating to' decedents' estates . . . 'to the full extent permitted by the constitution,' "[13] and "when exercising probate jurisdiction a superior court 'should continue to exercise its jurisdiction' to resolve 'questions ancillary' to the probate proceedings."[14] By statute that subject matter jurisdiction expressly extends to the "determination of heirs and successors of decedents."[15]

---

[11]    "We interpret statutes according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose." *Pestrikoff v. Hoff*, 278 P.3d 281, 283 (Alaska 2012) (citing *In re Estate of Maldonado*, 117 P.3d 720, 725 (Alaska 2005); *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003)). We "adopt 'the rule of law that is most persuasive in light of precedent, reason, and policy.' " *Maldanado*, 117 P.3d at 725 (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

[12]    *In re Estate of Fields*, 219 P.3d 995, 1005 (Alaska 2009) (explaining that when adopting Uniform Probate Code "Alaska chose [to place] subject matter jurisdiction for probate matters with the superior court" and probate court is not different than superior court).

[13]    *Id.* (alteration omitted) (first quoting AS 13.06.065(1)-(2); then quoting AS 13.060(1), (5)).

[14]    *Id.* at 1006 (quoting *Briggs v. Estate of Briggs*, 500 P.2d 550, 554 (Alaska 1972)).

[15]    AS 13.06.065(1).

Alaska Statute 13.12.114(a) also provides that "for purposes of intestate succession by, through, or from a person, an individual is the child of the individual's natural parents, regardless of their marital status, and the parent and child relationship may be established as indicated under AS 25.20.050." In relevant part AS 25.20.050(a) provides:  "A child born out of wedlock is legitimated and considered the heir of the putative parent when . . . the putative parent is determined by a superior court without jury or by another tribunal, upon sufficient evidence, to be a parent of the child."  Alaska Statute 13.12.114(d) further provides that "[t]o the extent there is a conflict between this section and . . . AS 25.20.050 . . . , [AS 13.12.114] controls."[16]  It is clear AS 13.12.114 contemplates that the probate court may enter a judgment regarding the parent and child relationship.

---

[16]     We note that AS 13.12.114 replaced former AS 13.11.045, which stated in relevant part:

> If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person,
>
>     . . . .
>
> . . . . [A] person born out of wedlock is a child of the mother; that person is also a child of the father, if:
>
>     . . . .
>
> [T]he paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof . . . .

Former AS 13.11.045 (1972), *repealed by* An Act Relating to the Uniform Probate Code, ch. 75, § 18, SLA 1996.  The former statute was based on 1969 Uniform Probate Code § 2-109.  *Compare* former AS 13.11.045 (1972), *with* UNIF. PROBATE CODE § 2-109 (1969).

Alaska Statute 13.12.114 is based on a Uniform Probate Code provision intended to provide that an illegitimate child be treated as a child of the father when parentage is sufficiently established under the Uniform Parentage Act:[17]

> If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person,
>
> . . . .
>
> . . . a person is the child of its parents regardless of the marital status of its parents and the parent and child relationship may be established under the [Uniform Parentage Act].[18]

It is evident that both the current and former probate statutes addressing paternity were adopted from Uniform Probate Code provisions contemplating that paternity determinations could be made *after* the putative father's death. But Alaska did not adopt the Uniform Parentage Act[19] — which provides that "[a] proceeding to adjudicate the parentage of a child having no presumed, acknowledged, or adjudicated father may be commenced at any time"[20] — and when AS 13.12.114 was created from the Uniform Probate Code language it instead contained the reference to AS 25.20.050. Although Willard argues that there can be no paternity determination because Seward is deceased and AS 25.20.050 requires a living defendant to establish paternity, nothing in

---

[17]    *See* UNIF. PROBATE CODE § 2-109 & cmt. (amended 2010); 1 AM. LAW INST. - ABA, UNIF. PROBATE CODE PRACTICE MANUAL 67-68 (Richard V. Wellman ed., 2d ed. 1977) (hereinafter WELLMAN).

[18]    UNIF. PROBATE CODE § 2-109 (1973) (alteration in original).

[19]    *See Rubright v. Arnold*, 973 P.2d 580, 583 n.1 (Alaska 1999) (noting Uniform Parentage Act "has not been adopted in Alaska").

[20]    UNIF. PARENTAGE ACT § 606 (amended 2002).

AS 25.20.050 compels the conclusion that paternity determinations may be made only against living persons. The statute simply states that "[a] child born out of wedlock is legitimated and considered the heir of the putative parent when . . . the putative parent is determined by a superior court without jury . . . upon sufficient evidence, to be a parent of the child."[21]

Given that: (1) when acting as a probate court the superior court has broad subject matter jurisdiction relating to decedents' estates, including matters ancillary to the estate proceedings; (2) probate courts are expressly empowered to determine the "heirs and successors of decedents"; and (3) AS 13.12.114 invites paternity determinations during estate proceedings in the manner set forth in AS 25.20.050(a), it was error to adopt the probate master's recommendations to deny Vincent's and Gaylene's paternity-related motions to the extent those denials were based on the specific ground that a paternity determination cannot be made during estate proceedings.

**B. Because The Request For An AS 13.12.114 Paternity Determination Was For Declaratory Judgment With Underlying Legal Claims, Laches Was Not An Available Defense.[22]**

As stated above AS 13.12.114 contemplates that the probate court may enter judgment regarding the parent and child relationship. This is a form of declaratory judgment.[23] Although courts have the authority to declare rights without granting

---

[21]    AS 25.20.050(a)(4).

[22]    Whether laches applies to a claim before the court is a legal question reviewed de novo. *Burke v. Maka*, 296 P.3d 976, 979 (Alaska 2013).

[23]    AS 22.10.020(g), Alaska's Declaratory Judgment Act, provides in part:

> In case of an actual controversy . . . the superior court . . . may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is

(continued...)

separate legal or equitable remedies, when deciding whether a request for declaratory judgment and any associated relief is time-barred, courts must look to the nature of the relief to determine whether laches or a statute of limitations applies.[24]  If the relief is equitable, laches applies; if the relief is legal, a statute of limitations applies.[25]  Here the request for declaratory judgment was associated with Gaylene's creditor claim and with Vincent's assertion of statutory property rights, both legal in nature.  Nothing about the request for declaratory judgment and associated relief was equitable in nature.

Courts have no inherent power to decide whether it would be equitable to adjudge someone a father.[26]  And we have long held that actions to collect child support are not equitable, but rather are legal in nature.[27]  Although the superior court may apply equitable principles when acting under its probate jurisdiction,[28] that does not include the

---

[23]     (...continued)
or could be sought. . . . Further necessary or proper relief based on a declaratory judgment or decree may be granted . . . against an adverse party whose rights have been determined by the judgment.

[24]     *Laverty v. Alaska R.R. Corp.*, 13 P.3d 725, 729-30 (Alaska 2000).

[25]     *Id.* at 730.

[26]     *See Dep't of Soc. Servs. v. Dinkins*, 442 N.Y.S.2d 887, 888 (N.Y. Fam. 1981) (stating that because paternity determination "is a creature of statute and clearly an action at law . . . [that] cannot be affected by laches"); *cf. T.P.D. v. A.C.D.*, 981 P.2d 116, 119-22 (Alaska 1999) (refusing to apply laches to bar a man from legally disestablishing paternity but acknowledging that equitable estoppel may apply to such an action).

[27]     *State, Dep't of Revenue, Child Support Enf't Div. ex rel. Valdez v. Valdez*, 941 P.2d 144, 152 (Alaska 1997).

[28]     *See* AS 13.06.015 ("Unless displaced by the particular provisions of
(continued...)

power to employ laches to bar a legal claim.[29]  Laches is inapplicable in this context, and it was error to apply it to preclude Vincent and Gaylene from pursuing their requests for declaratory and related legal relief in the probate proceedings.

C. **Gaylene's Creditor Claim Is Unquestionably Barred By The Statute Of Limitations,[30] And The Superior Court's Ruling That Gaylene Is Not An Interested Person In The Estate Proceedings Is Affirmed On This Alternative Ground.[31]**

Gaylene asserts she is an interested person in the estate proceedings because she is a creditor;[32] she seeks to establish that Vincent is Seward's son in connection with her legal claim for child support allegedly due her from 1982 through 2000; and she

---

[28]      (...continued)
[Alaska's Uniform Probate Code,] AS 13.06 - AS 13.36, the principles of law and equity supplement those provisions."); *see also Pestrikoff v. Hoff*, 278 P.3d 281, 286 (Alaska 2012) (noting that AS 13.06.015 "permits a court to apply equitable principles to supplement the probate code"); *Riddell v. Edwards*, 76 P.3d 847, 858 (Alaska 2003) (recognizing that "in deciding claims arising under the probate code, a court may exercise its equitable powers unless explicitly forbidden to do so"); *id.* at 855 ("Alaska's Uniform Probate Code generally gives trial courts broad latitude to supplement statutory provisions with equitable principles . . . ." (citing AS 13.06.015)).

[29]      *Gudenau v. Bang*, 781 P.2d 1357, 1363 (Alaska 1989) ("Laches is an equitable defense inapplicable to actions at law." (citing *Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.*, 694 P.2d 150, 157 (Alaska 1984))).

[30]      "We exercise our independent judgment when interpreting and applying statutes of limitations." *Heustess v. Kelley-Heustess*, 259 P.3d 462, 468 (Alaska 2011) (quoting *Koss v. Koss*, 981 P.2d 106, 106-07 (Alaska 1999)).

[31]      "We may affirm a judgment on any grounds that the record supports, even if not relied on by the superior court." *Snyder v. Am. Legion Spenard Post No. 28*, 119 P.3d 996, 1001 (Alaska 2005).

[32]      *Cf.* AS 13.06.050(24) (defining interested person in decedent's estate to include decedent's creditors).

seeks recovery from the estate based on this alleged pre-death obligation. The ten-year statute of limitations of AS 09.10.100,[33] subject to tolling during the child's minority under AS 09.10.140,[34] applies to claims for past child support.[35] Assuming Vincent is Seward's son and Gaylene has standing to assert her claim for long-past-due child support,[36] and given Gaylene's assertion that she knew Seward was Vincent's father when Vincent was born, the statute of limitations on Gaylene's claim expired years before Seward died. For this reason Willard's disallowance of Gaylene's creditor claim on the statute of limitations ground should have been sustained by the superior court, and we so hold. And because Gaylene's only basis for asserting that she is an interested person in the estate proceedings is her creditor claim, the superior court's conclusion that she is not an interested person in the proceedings is affirmed on this ground.

---

[33] "An action for a cause not otherwise provided for may be commenced within 10 years after the cause of action has accrued." AS 09.10.100.

[34] AS 09.10.140(a) provides:

> [I]f a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues . . . under the age of majority, . . . the time [during which the person is under the age of majority] is not a part of the time limit for the commencement of the action. . . . [T]he period within which the action may be brought is not extended in any case longer than two years after the disability ceases.

[35] *Heustess*, 259 P.3d at 468-69; *cf. State, Dep't of Revenue, Child Support Enf't Div. ex rel. Valdez v. Valdez*, 941 P.2d 144, 152 (Alaska 1997) (concluding that laches could not be applied to claim for child support arrearage).

[36] *See Heustess*, 259 P.3d at 468-69 & n.16 (holding that claim belongs to child but allowing mother to assert it on child's behalf).

**D.** **If Vincent Is Seward's Son, He Is An Interested Person In The Estate Proceedings.**

Alaska Statute 13.06.050(24) expressly includes a decedent's children as persons interested in the decedent's estate.[37]  This makes abundant sense, as there are several ways in which a decedent's child may be entitled to a portion of the decedent's estate.  For example a child is an intestate heir absent a valid will or to the extent a valid will does not dispose of the entirety of the decedent's estate.[38]  A child born after the execution of a will may be a pretermitted heir entitled to a share of the decedent's estate passing under the will.[39]  And a child may have the right to certain statutory allowances from the decedent's estate notwithstanding the existence of a valid will otherwise fully disposing of the decedent's estate.[40]  For these reasons notice of estate proceedings must be given to a decedent's child[41] — notice allows a decedent's child the opportunity to protect statutory rights and contest the validity of a will.

---

[37]     AS 13.06.050(24) (" '[I]nterested person' includes [a decedent's] heirs, devisees, [and] children . . . ."); *see also* AS 13.06.050(5) (" '[C]hild' includes an individual entitled to take as a child under AS 13.06 - AS 13.36 by intestate succession from the parent whose relationship is involved, and excludes a person who is only a stepchild, a foster child, a grandchild, or a more remote descendant.").

[38]     *See* AS 13.12.101(a); AS 13.12.103(1).

[39]     *See* AS 13.12.302.

[40]     *See* AS 13.12.401-.405 (establishing homestead, exempt property, and family allowances for protection of surviving spouses and children).

[41]     *See* AS 13.16.105(b) (requiring that after informal probate is initiated notice be given to decedent's "heirs"); AS 13.16.150(a) (requiring, at commencement of formal proceedings, notice to "children" of decedent); *see also* AS 13.06.110(a) (providing that required probate notices be given to any "interested person").

With this in mind we first address the merits of the parties' substantive arguments whether, if Vincent is Seward's son, Vincent might have a claim against the estate. Vincent argues on appeal that the 2008 will is invalid and he may be entitled to inherit under an alleged 2011 will; that even if the 2008 will is valid he is entitled to recover under the will as a pretermitted heir; and that he has the legal right to statutory allowances notwithstanding the existence of a will. Willard asserts that the 2008 will is valid and properly being probated; that Vincent cannot be a pretermitted heir under the will; and that Vincent is barred from seeking recovery under other language of the will. Willard does not address Vincent's claim to statutory allowances.

**1.** **The errors on the application and order for admission of Seward's 2008 will to informal probate are immaterial — the will accepted for probate is the 2008 will.**

There can be no dispute that Seward executed a will in 2008 and that this will was presented for probate. Willard later stated that she made a date mistake in her paperwork opening the estate, and Vincent offers no evidence to refute Willard's explanation. Vincent cannot seize solely on a scrivener's error in accompanying paperwork to invalidate an otherwise valid will facially complying with the requisite statutory formalities.[42]

We have recognized that honest mistakes are sometimes made in court documents and that courts should be free to correct them. Alaska Civil Rule 60(a), for example, provides: "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any,

---

[42] *See* AS 13.12.502(a) (stating that a will must be in writing, signed by the testator, and signed by at least two witnesses).

-18- **7175**

as the court orders."**43**   Although Willard should have requested that the superior court correct the date mistake in the order accepting the 2008 will for probate, implicit in its denials of Vincent's various motions regarding the mistake is the court's acknowledgment that the mistake was simply a mistake.   Other than the noted date discrepancy, no evidence was presented suggesting the actual existence of a 2011 will — the paperwork error alone does not affect the acceptance of Seward's 2008 will for probate.   We therefore affirm the superior court's acceptance of the 2008 will for probate, its appointment of Willard as the personal representative, and its rejection of Vincent's arguments about an alleged 2011 will.**44**

### 2. Vincent is not a pretermitted heir under the 2008 will and has no claim under the will.

The superior court ruled that Vincent is not a pretermitted heir under the 2008 will.   Vincent argues that he is a pretermitted heir because Seward did not intentionally disinherit him but rather "inadvertently forgot[]" to include Vincent in his will.

---

**43**      *See also Jensen v. Froissart*, 982 P.2d 263, 268 (Alaska 1999) ("As long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the [Rule 60(a)] modification will be allowed." (quoting *In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 504-05 (5th Cir. 1994))); *Allen v. Bussell*, 558 P.2d 496, 501 (Alaska 1976) (" '[C]ourts possess an ample remedial power to correct clerical mistakes in judgments, order[s], or other parts of the record . . . . In exercising the power to correct clerical mistakes, courts should, however, confine the power to correction of mistakes that may legitimately be said to be clerical, and exercise it only on a clear showing of mistake.' " (quoting 6A J. MOORE, FEDERAL PRACTICE 60.06(3), at 4061-63 (1974))).

**44**      Because the merits of Vincent's brief argument that the 2008 will is invalid due to Seward's testamentary incapacity or undue influence were never actually considered by the superior court, we assume but express no opinion about the validity of the 2008 will.

To qualify as a pretermitted heir eligible to "a share in the [testator's] estate," the testator's omitted child must be "born or adopted *after* the execution of the will."[45] Analyzing a former version of the pretermitted heir statute, we explained that "[t]he plain language of the statute indicates that [it] applies only to the testator's children . . . born or adopted after the execution of the will."[46] We explained that this statute's purpose was "not to compel parents to make testamentary provision for children, but to prevent the consequences of forgetfulness or oversight."[47] It was meant to protect a testator's children "against an unintentional omission in a will."[48] Vincent was born in 1982, but Seward executed his will in 2008. Because Vincent was not born or adopted after the execution of Seward's will, he cannot benefit from the presumption that he was omitted unintentionally. Thus he cannot qualify as a pretermitted heir under the 2008 will. The superior court's ruling on this issue was correct, and we affirm it; Vincent has no other claim under the will.

### 3. Vincent may be entitled to the statutory exempt property allowance.

Vincent argues that if he can prove he is Seward's son, he then would have a "legal right" to obtain "his Homestead Allowance, Family Allowance[,] and Exempt

---

[45] AS 13.12.302(a) (emphasis added).

[46] *Nicholson v. Sorensen*, 517 P.2d 766, 768 (Alaska 1973) (construing Alaska's pretermission statute, former AS 13.11.115(a) (1973) and noting that when "a testator fails to provide in his will for any of his children born or adopted after the execution of his will, the omitted child receives a share in the estate equal in value to that which he would have received if the testator had died intestate").

[47] *Id.* at 770 (quoting *Gerrish v. Gerrish*, 8 Or. 351, 353-54 (Or. 1880)); *cf.* AS 13.12.101(b) (providing decedent by will may "expressly exclude or limit" intestate succession rights of heirs).

[48] *Nicholson*, 517 P.2d at 772.

Property" from Seward's estate.[49]  Alaska's statutory exemptions are derived from §§ 2-401 to 2-404 of the Uniform Probate Code, which provide surviving spouses and certain children specific rights "in preference over unsecured creditors of the estate and persons to whom the estate may be devised by will."[50]

Although the homestead allowance originated in statutes intending to secure to the surviving family part of the estate in the form of a residence, the Uniform Probate Code retains the protection in the form of a dollar allowance.[51]  Alaska's version provides a $27,000 allowance to a decedent's surviving spouse, or, if there is no surviving spouse, to each minor and other dependent child of the decedent in pro rata shares.[52] This allowance "is exempt from and has priority over all claims against the estate," and is authorized in addition to any share passing to the surviving spouse or minor or dependent child through intestate succession or "by the will of the decedent, unless otherwise provided."[53]  Seward had no surviving spouse, but even if Vincent is Seward's son, he was not a minor or other dependent child of Seward at Seward's death and cannot be entitled to a homestead allowance from Seward's estate.

---

**49**     *See* AS 13.12.401-.405 (establishing homestead, exempt property, and family allowances for protection of surviving spouses and certain children).

**50**     *See* UNIF. PROBATE CODE § 2-4 cmt.; *see also* WELLMAN, *supra* note 17, at 110-14.

**51**     WELLMAN, *supra* note 17, at 111.

**52**     AS 13.12.402; *see also* AS 13.12.405(a) (setting out source for satisfaction of the allowance, including payment of cash).

**53**     AS 13.12.402; *see also* WELLMAN, *supra* note 17, at 112 (noting the allowance exists "except where the will specifically provides otherwise").

The family allowance is generally intended to provide a period of financial adjustment for the decedent's family, depending upon its needs.[54] Alaska's version provides that the decedent's surviving spouse, dependent minors, and other dependent children "are entitled to a reasonable allowance in money out of the estate for their maintenance during the period of [estate] administration."[55] The allowance may be limited to one year if the estate is otherwise inadequate to pay allowed claims against the estate,[56] and is subject to objection by interested persons and determination by the probate court,[57] taking into account the family's previous standard of living and existing resources available to meet current living expenses.[58] The family allowance is exempt from and takes priority over all other claims but the homestead allowance,[59] and like the homestead allowance "is not chargeable" against benefits from the decedent's will, unless otherwise provided, or from intestate succession.[60] Again, Seward had no surviving spouse, but even if Vincent is Seward's son, he was not a minor or other

---

[54]      WELLMAN, *supra* note 17, at 110-11.

[55]      AS 13.12.404(a).

[56]      *Id.*; *see also* AS 13.12.405(a) (allowing personal representative to "determine the family allowance in a lump sum not exceeding $18,000 or periodic installments not exceeding $1,500 per month for one year").

[57]      AS 13.12.405(a); *see In re Estate of Gregory*, 487 P.2d 59, 61-63 (Alaska 1971).

[58]      WELLMAN, *supra* note 17, at 110-11.

[59]      AS 13.12.404(a).

[60]      AS 13.12.404(b); WELLMAN, *supra* note 17, at 111 (stating allowance is "ordinarily not charged against any provision in the will of the decedent, but the will may expressly provide otherwise").

dependent child of Seward at Seward's death and therefore cannot be entitled to a family allowance from Seward's estate.

The exempt property allowance, like the original homestead allowance, relates to the surviving family's interest in certain property — Alaska's version provides that the decedent's surviving spouse, or if there is no surviving spouse, "the decedent's children," are entitled to items of "household furniture, automobiles, furnishings, appliances, and personal effects"[61] in value not exceeding $10,000. With some limitation other assets of the estate may be used to make up a deficiency in the listed assets, and the right to this allowance has priority over "all claims against the estate."[62] As with the other allowances, this allowance is in addition to the benefits given under a will, unless otherwise provided, or to those of intestate succession.[63]

Unlike the other two allowances, which in the absence of a surviving spouse are limited to minor and other dependent children (homestead allowance) or to dependent minor and other dependent children (family allowance), the exempt property allowance is directed to "children," which includes adult, non-dependent children.[64]

---

[61]     AS 13.12.403.

[62]     *Id.*

[63]     *Id.*; WELLMAN, *supra* note 17, at 113 ("Of course, the testator may force the spouse or children to elect to take property under the will in lieu of the exempt property by an express provision in the will, e.g., 'this provision for my wife is expressly in lieu of her right to homestead allowance and exempt property, and any family allowance to my wife shall be charged against this provision under my will.' ").

[64]     AS 13.12.405 (noting "children who are adults" may select property for exempt property allowance); UNIF. PROBATE CODE § 2-403, cmt. (am. 2010) ("Unlike the exempt amount described in Sections 2-402 [Homestead Allowance] and 2-404 [Family Allowance], the exempt amount described in this section [Exempt Property] is available in a case in which the decedent left no spouse but left only adult children.");
(continued...)

Therefore absent a valid will provision expressly charging the allowance against other property devised under the will,[65] Vincent is entitled to the $10,000 exempt property allowance if he is Seward's son; it is undisputed that no such will provision exists.

As noted earlier Willard has not addressed Vincent's claim to statutory allowances. She does, however, make a short argument that the "no-contest" clause in Seward's will applies to Vincent's efforts to share in Seward's estate. But even assuming the no-contest clause is enforceable and might be applicable to Vincent's challenge to the validity of the 2008 will,[66] it would have no bearing on Vincent's separate right to the exempt property allowance. Alaska's statutory allowances must be satisfied before estate expenses, allowed creditor claims, and distributions under a will are satisfied.[67] A will may provide that statutory allowances be charged against will distributions, and not be in addition to will distributions, but we are unaware of any

---

[64]    (...continued)
*see also* WELLMAN, *supra* note 17, at 113 (noting that when there is no spouse, "adult children" may partake in exempt property allowance).

[65]    *See* AS 13.12.402.

[66]    *Cf.* AS 13.12.517 ("A provision in a will purporting to penalize an interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings.").

[67]    *See In re Hutchinson's Estate*, 577 P.2d 1074, 1074-77 (Alaska 1978) (construing predecessor family allowance statute and rejecting contention that family allowance did not take priority over estate expenses, certain prioritized claims, and "all other claims" against the estate); *see also Richardson v. Estate of Berthelot*, No. S-13696, 2013 WL 203271, at *10 (Alaska Jan. 16, 2013) (affirming order granting surviving spouse her three statutory allowances, "which have priority over all other claims" against the estate).

authority suggesting that a testator otherwise can expressly or impliedly eliminate a surviving spouse's or child's rights to statutory allowances.[68]

**E.      We Do Not Decide At This Time Whether A Statute Of Limitations Bars Vincent From Establishing Paternity In The Estate Proceedings.**

Relying on *Grober v. State, Department of Revenue, Child Support Enforcement Division*,[69] Willard contends that AS 09.10.100's ten-year statute of limitations applies to all paternity actions.[70] She notes that AS 09.10.140(a), the disability tolling statute, provides that "the period within which the action may be brought is not extended in any case longer than two years after the disability ceases." Willard asserts that (1) given the tolling statute, Vincent was required to bring a paternity action against Seward by the time he was age 20, and (2) even if Vincent had the full ten-year limitation period after he reached the age of majority, he was required to bring a paternity action by the time he was age 28.

*Grober* involved the pursuit of an AS 25.20.050 paternity determination by the State in a child support context.[71] After noting that AS 25.20.050 does not delimit who may bring a paternity action and that the (unstated) statute of limitations tolls during

---

[68]      *Cf. In re Estate of Peterson*, 576 N.W.2d 767, 769, 772 (Neb. 1998) (holding adult emancipated child was entitled to statutory exempt property allowance despite specific will provision that under no circumstances should any share of estate go to that child); *Matter of Estate of Dunlap*, 649 P.2d 1303, 1305-06 (Mont. 1982) (holding child specifically disinherited in will was entitled to statutory exempt property allowance).

[69]      956 P.2d 1230, 1232 (Alaska 1998).

[70]      AS 09.10.100 ("An action for a cause not otherwise provided for may be commenced within 10 years after the cause of action has accrued.").

[71]      956 P.2d at 1231.

the child's minority,[72] we rejected the argument that because those entitled to bring a paternity action during the child's minority knew of the child's illegitimacy there was no "disability" necessitating tolling.[73] We quoted an earlier case: "It can be regarded as fundamentally unfair to a minor to saddle the minor with the consequences of [others'] neglect . . . ."[74] And we expressly noted that the rule allowing minors to assert their own actions after reaching the age of majority is designed to protect children, not to create "a modified version of the discovery rule."[75] Because the State's action was initiated during the child's minority, there was no possible statute of limitations bar to the action.[76] Thus we avoided discussing or deciding two other issues raised on appeal — whether there is a specific statute of limitations for a paternity action and whether a statute of limitations for a paternity action could survive a constitutional equal protection challenge.[77]

Although Willard raised her statute of limitations argument to the superior court, that court did not address it. At least the following questions seem relevant, none of which have been raised or discussed in the briefing for this appeal: Is there a specific statute of limitations and accrual date for AS 25.20.050 paternity determinations for *all*

---

[72]    *Id.* at 1232.

[73]    *Id.* at 1233 & n.5.

[74]    *Id.* at 1233 (quoting *Hanson v. Kake Tribal Corp.*, 939 P.2d 1320, 1326 (Alaska 1997)).

[75]    *Id.* at 1233 n.5.

[76]    *Id.* at 1231, 1232.

[77]    Brief of Appellee at 9-13, *Grober v. State, Dep't of Revenue, Child Support Enf't Div., ex rel. Clarence Willoya*, No. S-07353, (Sept. 23, 1996), 1996 WL 34392603 at *7-19; Reply Brief of Appellant at 5-9, *id.*, (Nov. 4, 1996), 1996 WL 34392604 at *4-13.

purposes, including the determination of heirs?[78] Or is a paternity determination request simply a declaratory judgment request not necessarily subject to a time bar defense itself, but with any attendant relief subject to a time bar defense?[79] Is AS 13.12.114(d) subject to any statute of limitations applicable to AS 25.20.050?[80] Is there a constitutional equal protection concern if a statute of limitations is applied in the manner Willard proposes to prevent an as-yet-unlegitimized child from being an heir to a parent's estate?

We therefore do not at this time decide the statute of limitations question, and we order supplemental briefing to assist us in resolving the question.

---

[78]    *See* AS 25.20.050(a) (providing child "is legitimated and considered the heir of the putative parent" after paternity determination).

[79]    *See supra* Section B. This raises the question when a statutory allowance claim arises. *See In re Hutchinson's Estate*, 577 P.2d 1074, 1075 (Alaska 1978) (noting family allowances seem to be "liabilities of the estate, and they arise at or after the death of the decedent"). Other courts have held that an illegitimate child's claim to inheritance accrues at the time of the parent's death and that a paternity statute of limitations does not apply. *See In re Estate of Rogers*, 81 P.3d 1190, 1198 (Haw. 2003); *Ellis v. Ellis*, 752 S.W.2d 781, 782-84 (Ky. 1988); *In re Estate of Kingsbury*, 946 A.2d 389, 394 n.4 (Me. 2008); *In re Estate of Palmer*, 658 N.W.2d 197, 199-200 (Minn. 2003); *In re Nocita*, 914 S.W.2d 358, 359 (Mo. 1996); *Wingate v. Estate of Ryan*, 693 A.2d 457, 463-64 (N.J. 1997); *C.L.W. v. M.J.*, 254 N.W.2d 446, 450 (N.D. 1977); *In re Estate of Greenwood*, 587 A.2d 749, 752 (Pa. Super. 1991); *In re Estate of Chavana*, 993 S.W.2d 311, 317-18 (Tex. App. 1999); *Marshall v. Bird*, 334 S.E.2d 573, 575 (Va. 1985); *Taylor v. Hoffman*, 544 S.E.2d 387, 395 (W. Va. 2001); *In re Estate of Thompson*, 661 N.W.2d 869, 880 (Wis. App. 2003). *But see In re Estate of Smith*, 685 So.2d 1206, 1208 (Fla. 1996) (holding that Florida has no separate statute of limitations for paternity determinations in probate proceedings).

[80]    *See* AS 13.12.114(a) ("[T]he parent and child relationship may be established as indicated under AS 25.20.050."); AS 13.12.114(d) (stating that AS 13.12.114 controls over AS 20.20.050 "[t]o the extent there is a conflict").

## V.    CONCLUSION

We AFFIRM the superior court's rulings that: (1) Seward's 2008 will was properly admitted to probate and that Willard was properly appointed the personal representative of the estate; (2) Gaylene Mock — on the alternative ground of the applicable statute of limitations — is not an interested person in the estate proceedings; and (3) Vincent Mock is not a pretermitted heir under Seward's 2008 will or otherwise entitled to claim under that will.  We REVERSE the superior court's ruling that Vincent Mock's statutory allowance claim is barred by laches and ORDER supplemental briefing on the question whether a statute of limitations bars him from seeking a paternity determination in the estate proceedings establishing his right to the statutory property allowance.